**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JOE HENRY MACK,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:06-CV-851-B (BH)** |
| | § | |
| **COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of Title 28, United States Code, § 636(b)(1)(B), and the District

Court's *Order of Reference*, filed May 22, 2006, this matter has been referred to the undersigned

United States Magistrate Judge for proposed findings of fact and recommendation for disposition.

Before the Court are *Plaintiff's Motion for Summary Judgment* ("Pl. Mot."), filed September 22,

2006; *Commissioner's Motion for Summary Judgment* and memorandum in support, filed November

28, 2006 ("Def. Mot."); and *Plaintiff's Reply Motion to Commissioner's Motion for Summary

Judgment* ("Pl. Resp."), filed December 11, 2006.  Having reviewed the evidence of the parties in

connection with the pleadings, the Court recommends that *Plaintiff's Motion for Summary Judgment*

be **GRANTED,** *Commissioner's Motion for Summary Judgment* be **DENIED**, and the case be

remanded to the Commissioner for further proceedings.

# I. BACKGROUND[1]

## A. <u>Procedural History</u>

Joe Henry Mack ("Plaintiff"), who proceeds *pro se* in this matter, seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. On September 19, 2002, Plaintiff filed an application for disability benefits. (Tr. at 152-61). Plaintiff claimed he was disabled due to hepatitis C, total deafness in the right ear, partial hearing loss in the left ear, a neurogenic bladder, calcified bones in his spine, and an unstable pelvis. (Tr. at 169). Plaintiff's application was denied initially and upon reconsideration. (Tr. at 35, 45). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 48). A hearing, at which Plaintiff personally appeared and testified, was held on October 9, 2003. (Tr. at 687-693). A second hearing, at which Plaintiff personally appeared and testified, was held on March 26, 2004. (Tr. at 683-86). Plaintiff was unable to appear at a third hearing scheduled for September 3, 2004, and requested disposition of his case in absentia. (Tr. at 135, 138-42). Plaintiff waived his right to appear at the third hearing, (Tr. at 148), and on April 26, 2005, the ALJ issued his decision without a hearing and found Plaintiff not disabled. (Tr. at 20-32). The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 6-8). Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. at 6). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on May 10, 2006.

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

## B. Factual History

### 1. Age, Education, and Work Experience

Plaintiff was born on July 31, 1959. (Tr. at 149). At the time of the two hearings before the ALJ he was 44 years old. (*See* Tr. at 683, 687). He completed the ninth grade and received his GED. (Tr. at 175). His past relevant work experience included work as automotive mechanic. (Tr. at 178). Plaintiff last worked in 1987, (Tr. at 165), although he also participated in inmate work programs associated with the Texas Department of Criminal Justice ("TDCJ") while incarcerated.[2] (*See* Tr. at 668).

### 2. Medical Evidence[3]

In 1971, Plaintiff became totally deaf in his right ear and severely hearing-impaired in his left ear due to chronic ear infections as a child. (*See* Tr. at 153, 272). Many of the health care professionals who examined Plaintiff over the years commented on his hearing impairment and use of a hearing aid in his left ear. (*See e.g.*, Tr. at 285, 564).

On February 9, 1995, while participating in an inmate work program, Plaintiff attempted to sit down in a flatbed truck as the driver drove away. (Tr. at 668). As a result of this accident, Plaintiff injured his leg, groin, back, and neck. *Id*. Dr. Robert Hardy, D.O., examined Plaintiff on February 17, 1995, for the trauma the accident allegedly caused to Plaintiff's back. (Tr. at 664). Dr. Hardy noted probable "spondylolysis on the left at the L5 level without associated

---

[2]Plaintiff was incarcerated from October 6, 1988, to January 15, 1989 (Tr. at 176); from August 8, 1991, to April 13, 1993 (*id.*); from September 9, 1993, to at least September 19, 2002 (*see* Tr. at 176-77); and for an unknown period of time that included the period from August 9, 2004, to March 3, 2005. (*See* Tr. at 130, 137, 148).

[3]Plaintiff's voluminous transcript contains duplicative, and at times irrelevant, medical records primarily from Parkland Memorial Hospital and various divisions of the TDCJ. The Court therefore focuses on those records that are relevant to the instant petition for review.

spondylolisthesis. No other pathology can be identified." *Id*.[4]

In July and August of 1998, a health worker at the TDCJ diagnosed Plaintiff with urinary incontinence and a neurogenic bladder.[5] (Tr. at 671). Plaintiff's incontinence requires frequent self-catheterization. (*See e.g.*, Tr. at 348, 389, 670). Although Plaintiff alleges that his neurogenic bladder resulted from his 1995 injury, (*see e.g.*, Mot. at 3), he does not cite to any medical record linking his incontinence to the truck accident.

Plaintiff's jail records from 1999 and 2000 note several other medical conditions. He uses knee braces on both legs to support weak knees (Tr. at 457); he has flat feet (Tr. at 511); he carries the hepatitis C virus (Tr. at 511); and he uses a sacroiliac joint ("SIJ") belt to ease pelvic instability. (Tr. at 504).

On December 23, 2002, Plaintiff visited the outpatient department of the Dallas County Hospital District. (Tr. at 241). Plaintiff complained of lower back pain which was exacerbated by the onset of cold weather and prolonged standing and walking. *Id*. Melissa Wright, a physician's assistant, noted tenderness and palpitations from L2-5 and at S1. *Id*. Ms. Wright also noted that Plaintiff was homeless and unemployed at the time. *Id*.

As part of his application for SSI benefits, Dr. Peter Louis, M.D., examined Plaintiff on February 4, 2003. (Tr. at 267-69). An x-ray of the spine found bilateral spondylolysis at the L5-S1 without spondylolisthesis. (Tr. at 271). Dr. Louis diagnosed Plaintiff with: (1) chronic low back

---

[4]"Spondylolysis" is the disintegration or dissolution of a vertebra. "Spondylolisthesis" is the forward displacement of a lumbar vertebra on the one below it and especially of the fifth lumbar vertebra on the sacrum. This produces pain caused by compression of nerve roots. MEDICAL DICTIONARY, *available at* http://www.nlm.nih.gov/medlineplus. (last visited December 26, 2007).

[5]A "neurogenic bladder" is the loss of normal bladder function caused by damage to part of the nervous system. The damage can cause the bladder to be underactive, in which it is unable to contract and unable to empty completely, or it can be overactive, in which it contracts too quickly or frequently. It can be caused by a birth defect, a tumor, or traumatic spinal cord injury. American Urological Association, *Adult Conditions: Neurogenic Bladder*, *available at* http://www.urologyhealth.org/adult/ (last visited December 26, 2007).

pain; (2) hepatitis C; (3) hearing loss in the right ear; and (4) urinary dysfunction and intermittent use of a catheter for urination. (Tr. at 268). Dr. Louis believed that Plaintiff could walk for at least two to three hours in an eight-hour work period, sit for 6-8 hours, lift medium weight objects, and speak and hear without impairment. (Tr. at 268-69).

On February 12, 2003, Dr. Jane Admire, M.D., an otolaryngologist, evaluated Plaintiff's hearing. (Tr. at 272). Dr. Admire observed that Plaintiff has worn a hearing aid in his left ear for several years. *Id*. On examination, she noted that Plaintiff had "completely normal speech but seem[ed] only to understand when looking directly at the speaker." *Id*. Dr. Admire diagnosed Plaintiff with "profound deafness in the right ear with severe hearing loss in the left ear improvable with a hearing aid." *Id*. With the assistance of a hearing aid, Plaintiff experienced up to 80% word discrimination in his left ear. *Id*. Dr. Admire made no medical or surgical recommendation to treat Plaintiff's hearing impairment. *Id*.

On March 18, 2003, Dr. Mark Sundin, M.D., a state agency medical consultant ("SAMC") reviewed Plaintiff's medical records. (Tr. at 259-266). Dr. Sundin gave a primary diagnosis of spondylolysis at L5-S1, a secondary diagnosis of hearing loss and obesity, and listed hepatitis C and high blood pressure as other impairments. (Tr. at 259). The only limitations identified by Dr. Sundin were that Plaintiff had limited communication abilities and should avoid noisy work settings. (Tr. at 263-64). Dr. Sundin concluded that the medical evidence did not fully support Plaintiff's alleged work limitations. (Tr. at 265).

On July 7, 2003, doctors at Parkland Hospital performed a liver biopsy on Plaintiff. (Tr. at 647). Dr. Saboorian, M.D., a pathologist, diagnosed Plaintiff with chronic hepatitis C with mild activity and "probable" Stage IV cirrhosis. (Tr. at 648).

Dr. Jeffrey Elliott, M.D., conducted a neurological examination of Plaintiff on December 9,

- 5 -

2003, as part of Plaintiff's application for disability benefits. (Tr. at 634-42). Dr. Elliott observed that Plaintiff experienced mild loss to vibration and pinprick stimuli and minimal loss in strength, both likely due to S1-S2 radiculopathy. (Tr. at 636). Dr. Elliott noted that the etiology of Plaintiff's neurogenic bladder was unclear but that he sometimes had urgent incontinence even though he self-catheterized every four hours. (Tr. at 635-36). Plaintiff walked without an assistive device but had some difficulty getting up on his toes. (Tr. at 636). An x-ray performed on the same date as the examination found a normal lumbar spine. (Tr. at 640). Dr. Elliott noted that Plaintiff understands conversational speech "quite well" even though his hearing loss is documented. (Tr. at 636). Dr. Elliott assessed Plaintiff's physical residual functional capacity ("RFC") and found that Plaintiff should only "occasionally" stoop and crouch and "never" climb or balance. (Tr. at 642). Finally, Dr. Elliott noted that Plaintiff's ability to hear was limited and that he should avoid heights. *Id.*

### 3. Hearing Testimony

Two hearings were held before the ALJ. Plaintiff appeared personally and was represented by an attorney at the first hearing, which took place on October 9, 2003. (Tr. at 687-93). The ALJ recognized that Plaintiff had medical problems related to his hearing and bladder. (Tr. at 691). Plaintiff commented that his hearing impairment was worse outside than inside and that he heard "pretty good" inside; he also commented that his hearing aid was not working properly on that particular day. *Id.* The ALJ determined that the medical record was poorly developed as it pertained to Plaintiff's allegations of lower back pain; because of this, he postponed the administrative hearing and ordered a neurological evaluation of Plaintiff's back. (Tr. at 690-92).

Plaintiff's counsel withdrew from representation on March 3, 2004. (Tr. at 103). As a result, Plaintiff appeared without a representative at the second administrative hearing, which was held on March 26, 2004. (Tr. at 684-86). Plaintiff requested and received a postponement of the second

hearing so that he could obtain representation. (Tr. at 685). The ALJ told Plaintiff that there were several sources of assistance, including legal aid. *Id*. The ALJ also suggested that Plaintiff try to find someone who could help him with his hearing aid (which was malfunctioning again) so that he could fully understand the administrative proceedings. *Id*.

On August 8, 2004, Plaintiff wrote a letter informing the Social Security Office of Hearings and Appeals that he had not yet obtained representation but that he would like to proceed with his appeal as soon as possible. (Tr. at 129). Plaintiff's third administrative hearing was scheduled for September 3, 2004. (Tr. at 104). Plaintiff acknowledged receipt of the notice of hearing on August 25, 2004, but requested a postponement due to incarceration in the Dallas County Jail. (Tr. at 130, 135). On February 2, 2005, Plaintiff requested to proceed with his appeal in absentia due to his ongoing incarceration. (Tr. at 137-42). In his request to proceed in absentia, Plaintiff informed the ALJ that he was terminally ill. (Tr. at 140). The Office of Hearings and Appeals acknowledged receipt of Plaintiff's letter, and in its response requested the name and address of the physician who diagnosed Plaintiff as being terminally ill. (Tr. at 143). The response contained a Waiver of Right to Appear for the disability hearing (form SSA-773-U4), which Plaintiff completed and returned on March 3, 2005. (Tr. at 148; *see* Tr. at 143).

**C.    ALJ's Findings**

The ALJ granted Plaintiff's waiver of right to appear and denied Plaintiff's application for SSI benefits by written opinion without a hearing on April 26, 2005. (Tr. at 20-32).

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability, December 31, 1971. (Tr. at 24; 31, ¶1). In addition, he found Plaintiff's hypertension, back disorders (discogenic and degenerative), hearing loss, hepatitis C, and shortness of breath were severe impairments within the meaning of the Social Security Regulations. (Tr. at

25-26; 31, ¶2).  Although the ALJ discussed Plaintiff's urinary dysfunction and intermittent use of a catheter, he did not include Plaintiff's bladder problems as a severe impairment.  (*See id*.)  The ALJ concluded that Plaintiff's severe impairments did not meet or equal a listed impairment as of his disability date.  (Tr. at 27; 31, ¶3).

The ALJ found that although Plaintiff had medically determinable impairments which could reasonably cause the symptoms alleged, the medical record as a whole did not support Plaintiff's allegation that he was completely unable to perform any work activity.  (Tr. at 27; 32, ¶4).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform a wide range of light work.  (Tr. at 30; 32, ¶5).  Although Plaintiff was unable to perform his past relevant work as an automobile mechanic, the ALJ considered Plaintiff's residual functional capacity and relevant vocational characteristics and concluded that the medical-vocational guidelines directed a finding of not disabled.  (Tr. at 30-31; 32, ¶11).  Accordingly, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act at any time through the date of his decision.  (Tr. at 31; 32, ¶13).

## II.  ANALYSIS

### A.  Legal Standards

#### 1.  Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3).  Substantial evidence is defined as more than a scintilla, less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d 558,

564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id.* Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id.*

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1.    An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.    An individual who does not have a "severe impairment" will not be found to be disabled.

3.    An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.    If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.    If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the analysis, the burden lies with the claimant to prove disability.

*Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id*.  Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.    Issues for Review**

Because Plaintiff is a *pro se* litigant, the Court liberally construes his brief and applies a less stringent standard in interpreting his arguments than it would in the case of a counseled party.  *Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995).  Despite the wide latitude afforded to *pro se* litigants,

arguments still must be briefed to be preserved. *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988). Mindful of these guidelines, the Court finds that Plaintiff presents the following issues for review:

    (1)    The ALJ did not consider whether his pelvic instability, torn knee ligaments, flat feet, back disorder, cirrhosis, hepatitis C, and urinary dysfunction were severe impairments (*see* Pl. Br. at 1, 14; Pl. Resp. at 7, 10);

    (2)    The ALJ's finding that the impairments listed in (1) did not meet or equal listed impairments is not supported by substantial evidence (*see* Pl. Br. at 14; Pl. Resp. at 17-18);

    (3)    The ALJ failed to fully develop the record with regards to his alleged medical impairments and terminal illness (*see* Pl. Br. at 7, 13); and

    (4)    The ALJ did not properly credit his credibility and subjective complaints of disability, including pain (*see* Pl. Br. at 6, 9-10).

## C.    Issue One: Severe Impairment

The Court first considers whether the ALJ properly determined Plaintiff's severe impairments. In the instant case, the ALJ found that Plaintiff suffered from the severe impairments of hypertension, back disorders (discogenic and degenerative), hearing loss, hepatitis C, and shortness of breath. (Tr. at 25-26; 31, ¶2). Plaintiff contends that the ALJ did not consider the medical evidence pertaining to his allegedly severe impairments of pelvic instability, torn knee ligaments, flat feet, cirrhosis, and urinary dysfunction.[6] (*See* Pl. Br. at 1, 14; Pl. Resp. at 7, 10).

Pursuant to the Commissioner's regulations, a severe impairment is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The Fifth Circuit has held that a literal

---

[6]Plaintiff also contends that the ALJ did not consider his back disorder or hepatitis C to be severe impairments. (*See* Pl. Br. at 1). It is clear from the ALJ's findings, however, that the ALJ found Plaintiff's back disorder and hepatitis C to be severe impairments. (Tr. at 31, ¶2). Plaintiff's allegation as it pertains to these two impairments is therefore without merit.

application of this regulation would be inconsistent with the Social Security Act because the regulation includes fewer conditions than indicated by the statute. *Stone v. Heckler*, 752 F.2d 1099, 1104-05 (5th Cir. 1985). Accordingly, in the Fifth Circuit, an impairment is not severe "only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." *Id*. at 1101. Additionally, the determination of severity may not be "made without regard to the individual's ability to perform substantial gainful activity." *Id*. at 1104.

To ensure that the regulatory standard for severity does not limit a claimant's rights, the Fifth Circuit held in *Stone* that it would assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to this opinion or another of the same effect, or by an express statement that the construction we give to 20 C.F.R. § 404.1520(c) (1984) is used." *Id*. at 1106; *accord Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000); *Eisenbach v. Apfel*, 2001 WL 1041806, at *6 (N.D. Tex. Aug. 29, 2001) (Boyle, J.). Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986). Unless the correct standard of severity is used, the claim must be remanded to the Secretary for reconsideration. *Stone*, 752 F.2d at 1106.

When the ALJ evaluated Plaintiff's severe impairments, he defined "severe impairment" according to the construction given in 20 C.F.R. § 416.920(c), the regulation applicable to claims for supplemental security income; this language mirrors that in 20 C.F.R. 1520(c), the applicable regulation for disability insurance benefits. *Compare* 20 C.F.R. § 416.920(c) with 20 C.F.R. § 1520(c). Section 416.920(c) requires a significant limitation on physical or mental abilities to do basic work activities. (Tr. at 25); *see* 20 C.F.R. § 416.920(c). The ALJ also explicitly cited to *Stone*

in his written opinion. (Tr. at 25). Since the ALJ set forth the correct statutory regulation and explicitly cited to the Fifth Circuit's construction of a severe impairment, the Court finds that the ALJ applied the correct legal standard at Step 2 of the sequential five-step analysis to determine whether a claimant is disabled.

Having determined that the ALJ applied the correct legal standard, the Court next considers whether substantial evidence supports the ALJ's decision not to include Plaintiff's allegations of pelvic instability, torn knee ligaments, flat feet, cirrhosis, and urinary dysfunction as severe impairments at Step 2. *See Greenspan*, 38 F.3d at 236. With regards to pelvic instability, torn knee ligaments, and flat feet, almost nothing in the voluminous medical record supports Plaintiff's allegations that these three impairments are disabling within the meaning of the Social Security Act. Although Plaintiff has hundreds of pages of medical records, each of these three impairments was mentioned only once by medical staff at the TDCJ. (*See* Tr. at 457, 504, and 511). None of the five physicians who examined Plaintiff diagnosed him with either pelvic instability, torn knee ligaments, or flat feet. (*See* Tr. at 241, 267-69, 272, 634-42, 648). In fact, the only examining physician to note any problem related to Plaintiff's feet was Dr. Elliott, who wrote that Plaintiff complained of numbness in the feet which was related to either peripheral neuropathy or unspecified bilateral foot problems. (Tr. at 636). Since none of Plaintiff's examining physicians diagnosed pelvic instability, torn knee ligaments, or flat feet, it appears that none of Plaintiff's examining physicians found these three alleged impairments to be more than slight abnormalities having such minimal effect that would interfere with Plaintiff's ability to work. *Stone*, 752 F.2d at 1101. Based on the almost complete lack of evidence in the medical record regarding these three impairments, the Court finds that Plaintiff has not met his burden to show that his pelvic instability, torn knee ligaments, and flat feet are severe impairments within the meaning of the regulations. *Leggett*, 67 F.3d at 564.

Accordingly, substantial evidence supports the ALJ's decision not to include these three impairments at Step 2 of his analysis. *Id*.; *Greenspan*, 38 F.3d at 236.

As for Plaintiff's allegations of cirrhosis and urinary dysfunction, both of these impairments were diagnosed by examining physicians. Dr. Saboorian diagnosed Plaintiff with chronic hepatitis C with mild activity and "probable" Stage IV cirrhosis after performing a liver biopsy on July 7, 2003.[7] (Tr. at 648). Plaintiff's urinary incontinence is well-documented throughout the medical record. For example, in July and August of 1998, a health worker at the TDCJ diagnosed Plaintiff with urinary incontinence and noted that this impairment requires frequent self-catheterization. (*See e.g.*, Tr. at 348, 389, 670). On February 4, 2003, Dr. Louis diagnosed Plaintiff with urinary dysfunction and the intermittent use of a catheter for urination. (Tr. at 268). Finally, Dr. Elliott noted on December 9, 2003, that Plaintiff sometimes had urgent incontinence of unknown etiology even though he self-catheterized every four hours. (Tr. at 635-36).

Although the ALJ acknowledged both Plaintiff's cirrhosis and urinary dysfunction in his written opinion, (Tr. at 25-26), he did not discuss how either of these medically determinable impairments impacted Plaintiff's ability to do basic work activities. He made no allowance for Plaintiff's need for frequent self-catheterization in his finding that Plaintiff could perform a wide range of light work,[8] nor did he address how complications from cirrhosis might interfere with Plaintiff's ability to work. (*See* Tr. at 25-26, 30). The Court cannot speculate how the workplace

---

[7] The Court is cognizant of the fact that the ALJ included hepatitis C as a severe impairment. (Tr. at 31, ¶2). It notes, however, that Dr. Saboorian's probable diagnosis of cirrhosis is a condition distinct from Plaintiff's hepatitis C infection. (Tr. at 648).

[8] The ALJ addressed the painful self-catheterization process when he assessed Plaintiff's RFC. (Tr. at 28). This point of error, however, pertains to Step 2, which is determined prior the RFC assessment. The Court notes that the ALJ's Step 5 determination that Plaintiff can perform work makes no allowance for the frequent catheterizations which Plaintiff alleges must be performed in a clean and sanitized environment. (*See* Tr. at 30-31).

might accommodate Plaintiff's diagnosed medical impairments of cirrhosis and urinary dysfunction; it can only scrutinize the record for substantial evidence and determine whether the Commissioner applied proper legal standards. *Greenspan*, 38 F.3d at 236. Thus, with regards to Plaintiff's cirrhosis and urinary dysfunction, the Court finds a lack of substantial evidence to support the ALJ's decision that neither impairment was "severe" within the meaning of the Social Security regulations. *Leggett*, 67 F.3d at 564; *Greenspan*, 38 F.3d at 236. For this reason, the case must be remanded for further consideration.

**D.** **Issue Two: Listed Impairment**

The next issue for the Court to consider is whether substantial evidence supports the ALJ's finding that Plaintiff's pelvic instability, torn knee ligaments, flat feet, back disorder, cirrhosis, hepatitis C, and urinary dysfunction did not meet or equal listed impairments. (*See* Pl. Br. at 14; Pl. Resp. at 17-18).

According to the Social Security regulations, if a claimant is not working, has a severe impairment, and meets the duration requirement, it must then be determined whether the claimant suffers from one of the "listed" impairments or an impairment equal to one of the listed impairments. 20 C.F.R. § 404.1520. If it is determined that the claimant suffers from a listed impairment or one equal thereto, the inquiry ends and the claimant is entitled to benefits. 20 C.F.R. § 404.1520(d). The claimant has the burden of proving that his impairment or combination of impairments meets or equals the listings. 20 C.F.R. § 404.1520(d); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). To meet a listed impairment, the claimant's medical findings (i.e., symptoms, signs and laboratory findings) must match those described in the listing for that impairment. 20 C.F.R. §§ 404.1525(d), 404.1528; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). To equal a listing, the claimant's medical finding must be "at least equal in severity and duration to the listed findings." 20 C.F.R. §

404.1526(a). Determinations of equivalence must be based on medical evidence only and must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 404.1526(b).

The Court first addresses the impairments it considered in Part II.C, *supra*. With regards to Plaintiff's allegations of pelvic instability, torn knee ligaments, and flat feet, substantial evidence supported the ALJ's decision not to find these three impairments to be severe within the meaning of the Social Security Act. (Part II.C, *supra*). The ALJ therefore did not err by not considering these three impairments at Step 3 since the disability determination process is sequential. *See* 20 C.F.R. § 404.1520(a)-(c). As for Plaintiff's diagnosed impairments of cirrhosis and urinary dysfunction, since the ALJ did not find them to be severe impairments, he did not proceed to Step 3 to determine whether they met or equaled a listed impairment. The Court found a lack of substantial evidence to support the ALJ's determination that these two impairments were not severe within the meaning of the Social Security act. If on remand the ALJ finds Plaintiff's cirrhosis and urinary continence to be severe impairments, he shall proceed through the sequential determination process and determine at Step 3 whether they meet or equal a listed impairment. 20 C.F.R. § 404.1520(c)-(d).

Remaining for consideration are Plaintiff's allegations of a back disorder and hepatitis C, neither of which the ALJ found to meet or equal a listed impairment. (Tr. at 27; 31, ¶3). Plaintiff did not identify which listed impairment he believes his back disorder meets or equals. (*See* Pl. Br. at 14; Pl. Resp. at 17-18). A review of the listed impairments finds that Appendix 1 addresses disorders of the spine in section 1.04. 20 C.F.R. Pt. 404, Appendix 1, Subpt. P § 1.04. Listing 1.04 requires:

A.      Evidence of nerve root compression characterized by neuro-anatomic

distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B.       Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C.       Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

*Id.* Plaintiff does not identify any medical evidence in the record to support the conditions described in subsections A, B, or C of Listing 1.04. Nor did he present any evidence that he could not ambulate effectively as defined in the Social Security regulations. Plaintiff alleges that he suffers from spondylolisthesis, (Pl. Br. at 1), but the two doctors who addressed spinal nerve root compression explicitly found that Plaintiff suffered from spondylolysis *without* associated spondylolisthesis. (Tr. at 271, 668).

A closer examination of the medical record supports the ALJ's determination that Plaintiff's back disorder does not meet or equal a listed impairment. The physical examination performed by Dr. Elliot on December 9, 2003, found a full range of motion in the neck, spine, and all joints examined; little tenderness in the lumbar or thoracic spine; and no paraspinal muscle spasm. (Tr. at 635, 638-39). Dr. Elliott observed some minor problems with Plaintiff's tandem gait and ability to get up on his toes, but Plaintiff still retained a normal ability to walk without an assistive device. (Tr. at 636). Dr. Elliott also noted "mild" loss to pinprick and vibrations and "very minimal changes" to strength. *Id.* Plaintiff presented no evidence contradicting Dr. Elliott's examination. For this reason, the Court finds that Plaintiff did not meet his burden to show that his back disorder

meets or equals a listed impairment. *Selders*, 914 F.2d at 619. Accordingly, substantial evidence supports the ALJ's decision regarding Plaintiff's back disorder at Step 3. *Leggett*, 67 F.3d at 564.

Plaintiff also contends that the ALJ should have found that his hepatitis C met or equaled a listed impairment. (*See* Pl. Br. at 14; Pl. Resp. at 17-18). Plaintiff did not identify which listed impairment he believes his hepatitis C meets or equals, but a review of Appendix 1 finds that chronic liver diseases, such as hepatitis C, fall under Listing 5.05. 20 C.F.R. Pt. 404, Appendix 1, Subpt. P § 5.05. Listing 5.05 requires:

A.  Hemorrhaging from esophageal, gastric, or ectopic varices or from portal hypertensive gastropathy, demonstrated by endoscopy, x-ray, or other appropriate medically acceptable imaging, resulting in hemodynamic instability as defined in 5.00D5, and requiring hospitalization for transfusion of at least 2 units of blood...; or

B.  Ascites or hydrothorax not attributable to other causes, despite continuing treatment as prescribed, present on at least two evaluations at least 60 days apart within a consecutive 6-month period...; or

C.  Spontaneous bacterial peritonitis with peritoneal fluid containing an absolute neutrophil count of at least 250 cells/mm3; or

D.  Hepatorenal syndrome as described in 5.00D8...; or

E.  Hepatopulmonary syndrome as described in 5.00D9...; or

F.  Hepatic encephalopathy as described in 5.00D10...; or

G.  End stage liver disease with SSA CLD scores of 22 or greater calculated as described in 5.00D11.

*Id*. Plaintiff did not identify any evidence in the medical record showing that he suffered from any of the ailments described in subsections (A) through (G), and a review of the medical records finds no evidence to support his contention that his hepatitis C meets or equals a listed impairment. The medical records only support the fact that he carries the hepatitis C virus; they do not support the proposition that he suffers from any complications arising from the hepatitis C virus, let alone the

proposition that the complications meet or equal a listed impairment. (*See* Tr. at 268, 511, 647). Since Plaintiff did not meet his burden to show that his hepatitis C met or equaled a listed impairment, the Court finds that substantial evidence supports the ALJ's decision regarding Plaintiff's hepatitis C virus at Step 3 of the disability determination process. *Selders*, 914 F.2d at 619; *Leggett*, 67 F.3d at 564.

**E.     Issue Three: Fully Developed Record**

Plaintiff also argues that the ALJ failed to fully develop the record with regards to his alleged medical impairments and terminal illness. (*See* Pl. Br. at 7, 13). The claimant bears the burden to present all evidence relevant to his claim of disability. 20 C.F.R. § 404.1512. When a claimant proceeds *pro se*, "the ALJ has a heightened duty…'to develop the facts fully and fairly and to probe conscientiously for all of the relevant information.'" *Gullett v. Chater*, 973 F. Supp. 614, 620 (E.D. Tex. 1997) (quoting *Ware v. Schweiker*, 651 F.2d 408, 414 (5th Cir. 1981)). "This duty requires a scrupulous examination of the claimant in regards to his injury, daily routine, pain, and physical limitations." *Id.* (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)). "Where the ALJ fails to meet this duty, a court must not hesitate to remand, if an adequate showing is made that the claimant was prejudiced." *Id.* Thus, the Court must determine whether the ALJ satisfied his heightened duty to elicit all relevant facts and, if not, whether Plaintiff was prejudiced. *See id.*

In the instant case, Plaintiff retained counsel through March 3, 2004, a period which included the first administrative hearing. (*See* Tr. at 103, 687). Because Plaintiff was represented by counsel, the ALJ had no heightened duty to fully and fairly develop the record for this period since it is the Plaintiff's burden to present all evidence relevant to his claim of disability. 20 C.F.R. § 404.1512; *see Gullett*, 973 F. Supp. at 620. Even though the ALJ was not under a heightened duty, his actions in the proceedings show that he paid careful attention to the full and fair development of the record.

At the first administrative hearing on October 9, 2003, the ALJ postponed adjudication of Plaintiff's disability claim and ordered a neurological evaluation of Plaintiff's back because he determined the medical record was poorly developed as it pertained to Plaintiff's allegations of lower back pain. (Tr. at 690-92). Dr. Elliott's findings from the neurological evaluation ordered by the ALJ supplemented the entire record, not just the record as it pertained to Plaintiff's back disorder. (*See* Tr. at 634-43). For example, Dr. Elliott's detailed clinical evaluation acknowledged Plaintiff's hepatitis C infection but did not indicate that Plaintiff suffered from any complications arising from these impairments. (*See* Tr. at 634-43).

The ALJ also attempted to fully and fairly develop the record as it pertained to Plaintiff's allegation of a terminal illness. Plaintiff informed the Office of Hearings and Appeals on February 2, 2005, that he was terminally ill due to his six alleged medical impairments (pelvic instability, torn knee ligaments, flat feet, back disorder, cirrhosis, hepatitis C, and urinary dysfunction). (Tr. at 140; *see also* Pl. Br. at 13). In its response, the Office of Hearings and Appeals requested the name and address of the physician who diagnosed Plaintiff as being terminally ill; the office also offered to contact Plaintiff's doctor and obtain the relevant medical records for the ALJ's consideration. (Tr. at 143). Plaintiff never responded to the request for more information, and it was his own actions that prevented the ALJ from further investigating the claim of a terminal illness.

Because the ALJ ordered the neurological examination performed by Dr. Elliott and requested (but never received) additional information regarding Plaintiff's allegation of a terminal diagnosis, the Court finds that the ALJ fully and fairly developed the record. *Brock v. Chater*, 84 F.3d at 728.

## F.      Issue Four: Credibility

Finally, Plaintiff asserts that the ALJ failed to properly assess his credibility and subjective

complaints of disability, including pain. (*See* Pl. Br. at 6, 9-10).

When a claimant alleges subjective symptoms such as pain, fatigue, shortness of breath, weakness, or nervousness, he must show that he suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms. 20 C.F.R. § 404.1529(b). Once a claimant has shown a medically determinable impairment, the ALJ must then consider both objective and subjective evidence about a claimant's symptoms, and this entails an assessment of the claimant's credibility. *Id*. at § 404.1529(c). Social Security Ruling 96-7p clarifies when the evaluation of symptoms requires a finding about the credibility of an individual's subjective complaints. The ALJ's "determination or decision [regarding credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2. To shed light on an individual's credibility, Social Security regulations provide a non-exclusive list of the following seven relevant factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, for relief of pain or other symptoms; (6) measures other than treatment the claimant uses to relieve pain or other symptoms (e.g., lying flat on his or her back...); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms." (*Id*. at *3). Credibility determinations by an ALJ are entitled to deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir.1991).

In the instant case, Plaintiff contends that the ALJ failed to consider his subjective

complaints of pain arising from his back disorder and hepatitis C.[9]  (*See* Pl. Br. at 9-10).  This allegation disregards the ALJ's finding that Plaintiff did have an objectively identifiable medical impairment that could cause the alleged symptoms.  (Tr. at 27).  Plaintiff's allegation also ignores the ALJ's statement that "[w]hile it is clear from the record that the claimant's impairments cause some limitations of his ability to perform work-related activities, the record as a whole does not support the claimant's allegations of complete inability to work due to his impairments."  (Tr. at 27). Plaintiff's issue for review therefore appears to be directed at the ALJ's determination that Plaintiff's subjective complaints did not support the conclusion that he was disabled, not that the ALJ did not consider his subjective complaints.

Although the ALJ did not analyze Plaintiff's subjective complaints according to the list specified in SSR 96-7p, his written rationale gave a well-reasoned and careful consideration of most of the factors relevant to disability determination.  The ALJ considered Plaintiff's daily activities (factor 1) by noting that Plaintiff could use his hands, watch television, perform housework, and take care of personal grooming.  (Tr. at 29, 186-87).  He considered the location, duration, frequency, and intensity of Plaintiff's subjective complaints (factor 2) by stating that Plaintiff suffered from chronic lower back pain since 1995 and history of hepatitis C.  (Tr. at 25).  He noted the factors that precipitate and aggravate symptoms (factor 3) by referring to Plaintiff's alleged inability to carry books.  (Tr. at 29).  He considered the type, dosage, effectiveness, and side effects of any medication taken to alleviate Plaintiff's subjective complaints (factor 4) by noting that Plaintiff experienced

---

[9]Plaintiff also asserts that the ALJ did not consider his subjective complaints regarding his cirrhosis and urinary dysfunction.  (*See* Pl. Br. at 10).  The Court recognizes that the ALJ considered Plaintiff's allegation of pain regarding his urinary incontinence and need for self-catheterization.  (Tr. at 28).  However, since the ALJ erred at Step 2, (*see* Part II.C, *supra*), this assessment of subjective complaints was made without the benefit of a Step 3 determination of a listed impairment.  On remand, if the ALJ determines that Plaintiff's cirrhosis and urinary dysfunction are "severe" within the meaning of the Social Security Act but do not meet or equal a listed impairment, he is directed to evaluate Plaintiff's subjective complaints as they relate to these two alleged impairments.

relief from pain medications but did not like to take them because they made him drowsy. (Tr. at 25, 28). He also considered the treatment, other than medication, for relief of Plaintiff's subjective complaints (factor 5) by noting that Plaintiff tries to lay down when he is in pain. (Tr. at 28). By addressing five of the factors relevant to Plaintiff's credibility, the ALJ gave much more than the mere conclusory statement or recitation of factors prohibited by Social Security regulations.[10] *See* SSR 96-7p, 1996 WL 374186, at *4.

Based on the medical evidence and Plaintiff's testimony, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints about his limitations were not completely credible. *Leggett*, 67 F.3d at 564; *see* Tr. at 18, ¶5. Moreover, as required by SSR 96-7p, the ALJ's determination contained specific reasons supported by the evidence in the case record for the finding on credibility. *See* 1996 WL 374186, at *2; *see* Tr. at 16.

### III.    RECOMMENDATION

For the foregoing reasons, the Court recommends that Plaintiff's *Motion for Summary Judgment* be **GRANTED**, *Commissioner's Motion for Summary Judgment* be **DENIED**, and the decision of the Commissioner be **REVERSED** and the case be **REMANDED** for reconsideration.

On remand the ALJ must, as a part of his Step Two analysis, determine whether Plaintiff's cirrhosis and urinary dysfunction constitute severe impairments. If the ALJ determines that Plaintiff's cirrhosis and urinary dysfunction are severe impairments, the ALJ should proceed through the sequential steps of the disability determination process.

---

[10]The only two factors the ALJ did not address in his written opinion were palliative measures other than treatment (factor 6) or the catch-all provision (factor 7). The Fifth Circuit has not specifically addressed whether an ALJ is required to consider all seven of the factors listed in SSR 96-7p. It has, however, explicitly rejected the requirement that an ALJ "follow formalistic rules" when assessing a claimant's subjective complaints of pain. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). The Court finds that any requirement to consider all factors of a non-exclusive, illustrative list would impose a formalistic rule on an area in which ALJs are given deference. *See Carrier*, 944 F.2d at 247; *see Falco*, 27 F.3d at 164.

**SO RECOMMENDED**, on this 10th day of January, 2008.


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten (10) days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985)*; Perales v. Casillas*, 950 F.2d 1066, 1070 (5th Cir. 1992). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten (10) days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE